Filed/Docketed
Jul 02, 2019

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN RE:**<br><br>**LAWRENCE BYRNE WEBB and ROBERTA LYNN WEBB,**<br><br>**Debtors.** | **Case No. 17-12431-M**<br>**Chapter 7** |
| **ILENE J. LASHINSKY, UNITED STATES TRUSTEE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAWRENCE BYRNE WEBB and ROBERTA LYNN WEBB,**<br><br>**Defendants.** | **Adv. No. 18-01008-M** |

**MEMORANDUM OPINION**

In this adversary proceeding, Ilene J. Lashinsky, the United States Trustee for this region ("Plaintiff" or "UST"), requests that the Court deny a discharge to Lawrence Byrne Webb ("Mr. Webb") and Roberta Lynn Webb ("Mrs. Webb," collectively, the "Webbs" or "Defendants") under 11 U.S.C. § 727(a)(2), (3), and (4)(A).[1] The parties agree that substantial information is missing from Defendants' original bankruptcy schedules and statements. The question is whether the omissions were knowingly and fraudulently made. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). The granting or denial of a discharge is a "core" proceeding as defined by 28 U.S.C. § 157(b)(2)(J).

## Findings of Fact

On December 13, 2017 (the "Petition Date"), Defendants filed a Voluntary Chapter 7 Petition (the "Original Petition"), Schedules, Statement of Financial Affairs ("SOFA"), and other miscellaneous statements.[2] Defendants signed their declarations under penalty of perjury in the Original Petition, Declaration Concerning Debtor's Schedules, and the SOFA. They were assisted by counsel in the preparation and filing of the bankruptcy case and filled out a packet of papers (the "Organizer") to provide their attorney with information regarding their finances. The UST appointed Sidney K. Swinson ("Chapter 7 Trustee") and he continues to serve as Chapter 7 Trustee of the Webbs' bankruptcy estate. At the meeting of creditors, held pursuant to § 341 on January 10, 2018 (the "§ 341 Meeting"), both Defendants testified under oath that they signed the Original Petition, Schedules of Assets and Liabilities, and SOFA, and that they had reviewed them and they were true and correct.

The Webbs have a history of owning and operating businesses. Mr. Webb holds a CPA license. Mrs. Webb identifies herself as an "accountant," and works at a local car dealership. In the recent past, Mr. Webb worked for a series of trucking companies as a controller. Prior to the Petition Date, Mr. Webb did contract work through a temporary agency. In March 2017, he started

---

[2] *Case No. 17-12431-M.*

a company called Diamondhawk Transportation, Inc. ("Diamondhawk"), of which he is both the sole owner and an employee. At the end of 2016, Mr. Webb purchased a company named Better Computing Systems, Inc. ("BCS"), which he closed in July 2017. In June 2016, the Webbs purchased the stock of a retail flooring outlet named OK Flooring Outlet, LLC ("OK Flooring"). That entity has since closed, and the Webbs are being sued by, and have asserted a counterclaim against, the seller. In December 2016, Mr. Webb began operating the flooring business as Flooring Plus, Inc. ("Flooring Plus"), but has since closed that business. The Webbs took on substantial debt as part of the purchase of OK Flooring and took on additional debt in order to support the fledgling business of Flooring Plus. The inability to service this debt load eventually drove the Webbs to file for bankruptcy protection with this Court.

The UST identifies a substantial number of mistakes or missing information from the Defendants' Original Petition, Schedules, and SOFA:[3]

1. *Undisclosed personal property*

    a. In response to Question 18 in their original SOFA, which read: "Within 2 years before you filed bankruptcy, did you sell, trade, or transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" – Defendants checked the box "no."

    b. Within 2 years before the Petition Date, Defendants sold a 1990 Carver 38 foot cabin cruiser (the "Boat") for $23,000; a 1995 Ford F150 XLT pickup truck (the "Truck") for $1,000; and a Forklift belonging to one of the businesses for $5,075, which was deposited in the Webbs' personal checking account.

---

[3] Many of these facts represent admitted facts submitted by the parties in the PreTrial Order, *at Docket No. 19*. Additional facts were established from testimony and evidence received at trial.

    c. At the § 341 Meeting, the Chapter 7 Trustee specifically asked the Defendants if they had sold anything of value in the last 2 years and they responded "no."

2. *Undisclosed tax refunds*

a. In their original Official Form 106A/B, Question 28, the Defendants checked the box "no" in response to whether any tax refunds were owed to them.

b. As of the Petition Date, Defendants were entitled to a 2016 Federal tax refund of $11,293.00 and a 2016 State of Oklahoma tax refund of $2,661.00 (the "Tax Refunds").

3. *Undisclosed income*

a. Income to Mr. Webb from Diamondhawk was not disclosed.[4]

b. The UST identified draws during the year prior to the Petition Date totaling $1,900 from BCS to Mrs. Webb; $1,400 from Diamondhawk to Mrs. Webb; $15,554 from Flooring Plus to Mrs. Webb; and $2,000 from Flooring Plus to Mr. Webb (collectively, the "Business Draws") that were not disclosed.[5]

c. The UST identified cash deposits made during the year prior to the Petition Date of $5,000 made by Mr. Webb and $7,450 made by Mrs. Webb that were not disclosed or explained.

---

[4] *See* PreTrial Order, *Docket No. 19*, Admitted Facts ¶ 14(d).

[5] The Court notes that in the Organizer, the Webbs indicated that they received $1,000 per month from the operation of a business, *see* UST Exh. No. 1 at 46, but that each Schedule I filed with both the Original and Amended Petitions indicates no income from the operation of a business. *See* UST Exh. No. 2-47, Question 8a; UST Exh. No. 6-54, Question 8a.

      d. Income to Mr. Webb for preparing tax returns and forming corporate entities for a fee for others was not disclosed. The Webbs estimate this income to be approximately $850 for the year 2017.

4. *Undisclosed operation of business*

      a. The Webbs operate a booth at a small antique mall ("River City"). Inventory of the booth consists of several old cameras and other miscellaneous items acquired at garage sales that are offered for sale to the public. Neither the operation of the booth nor the inventory stored at the booth was disclosed.

      b. Net revenue from the River City booth, after deducting booth rental but not cost of goods sold, totaled $77.70 in the year prior to the Petition Date.[6] That revenue was not disclosed.

5. *Undisclosed professional license*

      a. The CPA license held by Mr. Webb was not disclosed.

6. *Undisclosed gambling income*

      a. $79,500 income from gambling in 2016 was not disclosed.

7. *Mischaracterization of debt*

      a. Debts are listed as primarily consumer debts when they are in fact primarily business debts.

      b. No co-debtors were listed when, in fact, there were 35 debts associated with 4 business co-debtors.

8. *Undisclosed financial accounts*

---

[6] *See* UST Exh. No. 13-6 to -7.

    a. Defendants' interests in the following 10 financial accounts were not disclosed:

        i. BancFirst Small Business A/A #3715 (Diamondhawk)

        ii. BancFirst Small Business A/A #5454 (Flooring Plus)

        iii. BancFirst Small Business A/A #3707 (BCS)

        iv. Firstar Bank Commercial Checking #0608 (Diamondhawk)

        v. Firstar Bank Commercial Checking #4791 (Flooring Plus)

        vi. BancFirst Small Business A/A #3723 (Flooring Plus)

        vii. Arvest Free Blue #0512 (Roberta Lynn Webb or Lawrence Byrne Webb)

        viii. Firstar Bank Commercial Checking #8123 (BCS)

        ix. Oklahoma Central Credit Union Personal Checking #520 (Roberta L. Webb, Lawrence B. Webb)

        x. Oklahoma Central Credit Union Business Checking #050 (Flooring Plus)

9. *Undisclosed counterclaim*

    a. The existence of a counterclaim for $200,000 in a Tulsa County District Court lawsuit filed on May 4, 2017 (CJ-2017-770) was not disclosed.

10. *Undisclosed financial statements issued*

    a. The issuance of financial statements within 2 years preceding the Petition Date was not disclosed.

11. *Undisclosed gifts to charity*

    a. Gifts to charity in 2015 of $11,021 and in 2016 of $6,392 were not disclosed.

12. *Undisclosed names*

    a. Variations of Mr. Webb's legal name used in doing business were not disclosed.

The UST filed this adversary proceeding on April 11, 2018. Defendants filed an Amended Petition (the "Amended Petition"), Amended Schedules, and Amended SOFA on May 2, 2018. The following is a list of changes made in the Amended Petition, Amended Schedules, and Amended SOFA:

| | DESCRIPTION OF CHANGE/AMENDMENT | PLACE IN DOCUMENTS CHANGE/AMENDMENT IS FOUND |
|---|---|---|
| 1. | Names used in the last 8 years was amended to include Lawrence Webb and Byrne Webb | Petition, Q#2, Page 1 of 67 |
| 2. | Checked "yes" in answer to: "Are you a sole proprietor of any full- or part-time business?" | Petition, Q#12, Page 4 of 67 |
| 3. | Changed designation of debts from primarily consumer to primarily business | Petition, Q#16, Page 6 of 67 |
| 4. | Added attachment to supplement Q#12 above—added: 1. Better Computer Systems, Inc., 2. OK Flooring Outlet, LLC, 3. Flooring Plus, Inc., and 4. Diamondhawk Transportation, Inc. | Petition, Pages 8-9 of 67 |
| 5. | Increase value of personal property from $19,983.44 to $33,987.44 | Sum. of Assets and Liab., Part 1, line 1b, Page 10 of 67 |
| 6. | Changed designation of debts from primarily consumer to primarily business | Sum. of Assets and Liab., Part 4, Q#7, Page 10 of 67 |
| 7. | Checked "yes" to Q#27 and added CPA license of Mr. Webb | Schedule A/B, Part 4, Q#27, Pages 16-17 of 67 |
| 8. | Checked "yes: to Q#28 and added 2016 Federal and State tax refunds of $11,293.00 and $2,661.00 respectively | Schedules A/B, Part 4, Q#28, Page 17 of 67 |
| 9. | Checked "yes" to Q#33 and added claim against Marcela Cornejo for fraud $0.00 value | Schedules A/B, Part 4, Q#28, Page 17 of 67 |
| 10. | Checked the box "yes" to Q#16 and added Cash in the Possession of Debtors of $50.00 | Schedule A/B, Q#16, Page 15 of 67 |
| 11. | Added Cash in the Possession of Debtors to Q#2 of $50.00 and claimed it exempt | Schedule C, Q#2, Page 21 of 67 |
| 12. | Added additional tax years of 2013, 2014, and 2015 to dates tax debt incurred | Schedule E/F, Q#2, Page 24 of 67 |
| 13. | Changed amount of debt to Liberty Mutual from $1,700.00 to $700.00 | Schedule E/F, Page 36 of 67 |
| 14. | Added 35 debts with co-debtors (4 corporate entities) | Schedule H, Q#3, Pages 47-52 of 67 |
| 15. | Checked the box "no" to Q#6 and added payments made to Wells Fargo Dealer Services and Wells Fargo Home Mortgage | SOFA, Part 3, Pages 59-60 of 67 |
| 16. | Changed from checked "yes" to un-checked regarding designation of consumer debt | SOFA, Part 3, Page 60 of 67 |

| | | |
|---|---|---|
| 17. | Checked the box "yes" to Q#14 and added six (6) contributions to charities totaling $16,921.00 | SOFA, Part 5, Page 62 of 67 |
| 18. | Checked the box yes to Q#18 and added sale of 1990 Carver Cabin Cruiser and 1995 Ford F150 XLT | SOFA, Part 7, Page 63 of 67 |
| 19. | Checked the box "yes" to Q#20 and added seven (7) financial accounts | SOFA, Part 8, Page 63-64 of 67 |
| 20. | Added IGWT, Inc., to list of sole proprietorships (with no additional details) to Q#27 | SOFA, Part 11, Page 66 of 67 |
| 21. | Checked the box "yes" to Q#28 and added one (1) financial statement to Citizens Security Bank in September of 2016 | SOFA, Part 11, Page 66 of 67 |

The Defendants admit that none of the changes/amendments above would have been made but for the investigative efforts of the UST. Despite the amendments made on May 2, 2018, the Defendants admit that the Amended Petition, Amended Schedules, and Amended SOFA contain errors and omissions.[7] The Defendants did not include information regarding sales or inventory of their business of selling products at the River City booth. Defendants admit that they did not include all sources of income in their Original Petition, Schedules, and SOFA, but they have not filed any amendments that disclose or identify that income.[8] For example, the Amended SOFA continues to indicate that the Defendants received no income from the operation of a business in the 2 years prior to the Petition Date, despite UST's evidence regarding the Business Draws.

Among the evidence presented by the UST at trial was a commercial loan file from Oklahoma Central Credit Union that contains 2 different versions of the Webbs' 2015 IRS tax return.[9] The two versions contain significantly different information regarding the source of the Webbs' income. One version, dated 5/16/16, contains a business profit and loss statement

---

[7] *See* PreTrial Order, *Docket No. 19*, Admitted Facts ¶ 17.
[8] *Id*. at ¶ 20. *See also* UST Exh. No. 9, Responses to Requests for Admissions Nos. 31, 32, 33, & 36.
[9] *See* UST Exh. No. 15.

(Schedule C) for the business OK Flooring Outlet, LLC, which the Webbs have elsewhere stated that they did not purchase until June 24, 2016.[10]

The Webbs posit that the errors and omissions in the Original Petition, Schedules, and SOFA were inadvertent and corrected by the Amended Petition, Amended Schedules, and Amended SOFA. Defendants offer the following defenses/explanations to the UST's allegations:

1. When asked why they did not file amendments prior to the filing of this adversary proceeding, the Defendants expressed their understanding that they would only be allowed to file a single set of amended pleadings. The Court does not know the basis for this belief.

2. When asked why they omitted the sale of the Boat and Truck, they stated that they "simply forgot" about those sales. They did not disclose the sale of the Forklift because it was an asset of one of the business entities, notwithstanding the fact that they deposited the proceeds of sale in their personal account.

3. When asked why they failed to schedule the expected Tax Refunds for 2016, Mr. Webb stated that a tax refund is not considered an asset prior to confirmation by the IRS. With regard to the tax debt to the IRS listed in the Original Petition, Defendants admit that the information was misleading because it stated that the entire $40,000 debt had been incurred in 2012. They did not correct that misunderstanding at the § 341 meeting.[11] In the Amended Schedules, the information was corrected to indicate that the tax debt spanned the years 2012 to 2015. At the trial in this proceeding, Mr. Webb stated that the Webbs' 2015 IRS tax return had been amended to add gambling winnings and losses, such that no tax was due for 2015, although no copy of that return was provided to the UST.

---

[10] *See* UST Exh. No. 22-2 ¶ 1.
[11] *See* UST Exh. No. 3-22, *ll*. 1-15.

4. Mr. Webb was asked why they had failed to report any draws taken from the business during the 2 years prior to the Petition Date. He stated his belief that Schedule I only asked for information regarding "regular" income, therefore the Business Draws were omitted because they were taken at irregular intervals. He provided no explanation, despite being asked, why the draws were omitted from the SOFA Question 4 (both Original and Amended) regarding income from the operation of a business.

5. Regarding the original characterization of their debts as primarily consumer debts, Defendants stated their understanding, gleaned from counsel, that a personal guarantee of business debt is considered "personal consumer debt."[12] The characterization was corrected in the Amended Petition and Amended SOFA.

6. Similarly, Defendants explained that their original omission of business bank accounts was based on their understanding that they only need list personal accounts, and not every business account on which they had signing authority.[13] With minor exceptions, these omissions were corrected in the Amended Petition and Amended SOFA.

7. Regarding the booth at River City, the Webbs stated their belief that it was a "hobby," not a viable reportable revenue producing company, and immaterial to their financial situation.[14]

8. Regarding the question of whether they had given personal financial statements to any creditor in the year before the Petition Date, the Defendants were equivocal. In the Organizer presented to their attorney, the Webbs indicated that they had given financial statements "about your business" to 3 separate banking entities: Firstar Bank, Blue Sky Bank, and Oklahoma Central

---

[12] *See* UST Exh. No. 7-2 ¶ 11 (Defendants' Answer to Complaint, *at Docket No. 6*).
[13] *See* UST Exh. No. 4-42, *ll*. 13-17; UST Exh. No. 7-4 ¶ 24-25.
[14] On their 2014 tax return to the IRS, the Webbs scheduled the River City booth as a Schedule C business which generated losses of $8,542. *See* UST Exh. No. 15-26.

Credit Union.[15] The Original Petition indicated that no such statement had been issued.[16] When asked by the Chapter 7 Trustee at the § 341 Meeting, the Defendants stated that they had not submitted a "personal financial statement" to anyone in the previous 2 years.[17] In the Amended SOFA, Defendants state that they provided a single financial statement to "Citizens Security Bank" in September 2016.[18] In their Answer to the UST's Complaint in this adversary, the Defendants expressed their belief that they had disclosed the issuance of 3 financial statements in the Original Petition.[19]

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

**Burden of Proof**

The UST asks the Court to deny the Webbs a discharge pursuant to 11 U.S.C. § 727(a)(2), (3), and (4)(A). In order to prevail under these sections, the UST must prove each statutory element by a preponderance of the evidence.[20] Once the UST establishes a *prima facie* case for denying a discharge under § 727, the burden of going forward shifts to the Webbs.[21] The ultimate burden, however, remains with the UST.[22] In order to further the policy of providing a debtor with a "fresh start," "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against

---

[15] *See* UST Exh. No. 1-60, Question 28.

[16] *See* UST Exh. No. 2-58, Question 28.

[17] *See* UST Exh. No. 3-64, *ll.* 24-26, to -65, *ll.* 1-11.

[18] The Court notes that Citizens Security Bank is not a creditor of the Webbs, but the address provided is that of a branch of Blue Sky Bank, which used to be called Citizens Bank.

[19] *See* UST Exh. No. 7-5 ¶ 36.

[20] *See* Fed. R. Bankr. P. 4005. *See also First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *cf. Grogan v. Garner*, 498 U.S. 279 (1991).

[21] *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984); *Everspring Enters., Inc. v. Wang (In re Wang)*, 247 B.R. 211, 214 (Bankr. E.D. Tex. 2000).

[22] *See First Union Nat'l Bank v. Golob (In re Golob)*, 252 B.R. 69, 75 (Bankr. E.D. Va. 2000) (citing *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994)).

the creditor."[23] Even so, "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor."[24]

**Conclusions of Law**

Section 727(a)(4)(A) of the Code provides that a discharge may be denied where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"[25] "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations."[26] The United States Court of Appeals for the First Circuit has held that

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.[27]

The Fourth Circuit has held that

> [i]n order to be denied a discharge under this section [§727(a)(4)(A)], the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud. The false oath made by the debtor must have related to a material matter. Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact.[28]

---

[23] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997).
[24] *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).
[25] § 727(a)(4)(A).
[26] *Davis v. Weddington (In re Weddington)*, 457 B.R. 102, 113 (Bankr. D. Kan. 2011) (citations omitted).
[27] *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (citations omitted).
[28] *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987) (citations omitted). *See also In re Brown*, 108 F.3d at 1294 ("In order to deny a debtor's discharge pursuant to this provision [§ 727(a)(4)(A)], a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.").

A statement contained in a debtor's schedules or statement of affairs, or the omission of assets from the same may constitute a false oath for purposes of § 727(a)(4)(A).[29] Because the debtor is usually the only person able to testify directly concerning intent, "fraudulent intent may be deduced from the facts and circumstances of a case."[30] The United States Court of Appeals for the Tenth Circuit has provided further guidance in the application of § 727(a)(4)(A), holding that "[a] debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence."[31] We have also been instructed that "an honest error or mere inaccuracy is not a proper basis for denial of discharge."[32] On the other hand, a debtor may not escape a denial of discharge under § 727(a)(4)(A) by asserting that the omitted information concerned assets he or she believed to be worthless.[33]

---

[29] *See Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990).

[30] *Id.* at 955-56. Although not directly on point, the Court has found helpful certain cases dealing with revocation of discharge for failure to disclose assets under § 727(d)(2). The United States Court of Appeals for the Seventh Circuit has held that
> [t]o find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud. The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied. The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances.

*In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) (citations omitted). *See also Kaler v. Olmstead (In re Olmstead)*, 220 B.R. 986, 994 (Bankr. D.N.D. 1998) (quoting *Yonikus*); *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997) (fraud "may be proven by evidence that Debtors were aware the omitted assets existed and that they knew failure to list the assets would mislead creditors or the Trustee").

[31] *In re Brown*, 108 F.3d at 1294.

[32] *Id.* at 1295.

[33] *In re Calder*, 907 F.2d at 955 (citing *In re Chalik*, 748 F.2d at 618).

***False Oath***

There is no dispute that Defendants made false statements under oath when they omitted assets from the Original Petition, Schedules, and SOFA. Defendants (1) failed to disclose the sale of the Boat and Truck; 2) failed to disclose that they were entitled to the Tax Refunds; and 3) failed to disclose the Business Draws. Each of those items should have been disclosed on their Original Petition, Schedules, and SOFA. Defendants also failed to disclose the sale of the Boat and Truck at the § 341 Meeting when directly questioned about the sale of assets within 2 years. The only dispute surrounds whether those errors were inadvertent and/or immaterial, as argued by the Webbs, or whether they were intentional, fraudulent, and material, such that they warrant a denial of the Webbs' discharge, as alleged by the UST.

***Materiality***

Defendants assert that the omitted information in question was not material. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[34] Whether or not the Boat, Truck, Tax Refunds, or Business Draws would have generated substantial assets for the estate, they were each assets whose transfer would rightly have been investigated by the Chapter 7 Trustee, and therefore should have appeared on the Original Schedules. "Detriment to a creditor need not be shown in order to establish fraudulent concealment or a false oath barring discharge."[35] "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets

---

[34] *In re Chalik*, 748 F.2d at 618. *See also In re Calder*, 907 F.2d at 955 (citing *Chalik*); *UST v. Garland (In re Garland)*, 417 B.R. 805, 814 (10th Cir. BAP 2009).
[35] *Farmers Co-op. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395-96 (10th Cir. 1982).

are worthless or are unavailable to the bankruptcy estate."[36] The Court finds that the Boat and Truck were transferred within one year of the Petition Date, and the omission of these sales from the Original SOFA constitutes a material omission under § 727(a)(4)(A). In addition, the Court finds the Tax Refunds were owed to the Defendants on the Petition Date, rendering them property of the estate. Their omission from the Original Schedules constitutes a material omission under § 727(a)(4)(A).[37] Lastly, the Business Draws were relevant to the Defendants' business dealings and estate property, and their omission from the Original Petition and SOFA constitutes a material omission under § 727(a)(4)(A).

***Fraudulent Intent***

As previously noted, "fraudulent intent may be deduced from the facts and circumstances of a case."[38] A false oath caused by mere mistake or inadvertence is not sufficient to bar a debtor's discharge. Nor is an honest error or a mere inaccuracy.[39] However, "reckless indifference to the truth. . .has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)."[40] Reckless disregard means "not caring whether some representation is true or false."[41] Upon consideration of all the facts and circumstances, the Court concludes that the

---

36 *In re Yonikus,* 974 F.2d 901, 904 (7th Cir. 1992).
37 *See In re Barowsky*, 946 F.2d 1516, 1519 (10th Cir. 1991).
38 *In re Calder,* 907 F.2d at 955–56; *see also Farmers Co-op. Ass'n v. Strunk*, 671 F.2d at 395 ("Fraudulent intent of course, may be established by circumstantial evidence, or by inferences drawn from a course of conduct.").
39 *See In re Brown,* 108 F.3d at 1294–95.
40 *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir.1987) (internal quote and citation omitted). *See also In re Yonikus,* 974 F.2d at 905; *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992); *Los Alamos Nat'l Bank v. Lamey (In re Lamey)*, 574 B.R. 240, 250 (Bankr. D.N.M. 2017); *Freelife Int'l, LLC v. Butler (In re Butler),* 377 B.R. 895, 922 (Bankr. D. Utah 2006); *Cadle Co. v. King (In re King)*, 272 B.R. 281, 302 (Bankr. N.D. Okla. 2002).
41 *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

Defendants' false oaths were made fraudulently or with such reckless indifference to the truth as to warrant the denial of their discharge.

*Tax Refunds*

"A debtor acts knowingly if he or she acts deliberately and consciously."[42] The Defendants' omission of the Tax Refunds from the Original Schedules was knowing and fraudulent. Mr. Webb testified that he knew the Webbs were entitled to the Tax Refunds for the year 2016 and knowingly chose not to disclose them in the Original Schedules. He reasoned that they were omitted because they had not been "validated" by the IRS or State, and that he did not consider anticipated refunds to be "assets" until he received documentation from the IRS or State verifying them as such. The Court finds this answer to be too clever by half. The Court of Appeals for the Tenth Circuit has held that "the portion of the [debtors'] income tax refund attributable to the pre-petition portion of the taxable year in question constitutes property of the bankruptcy estate."[43] The official bankruptcy form instructs the debtor to "[g]ive specific information about [tax refunds owed you], including whether you already filed the returns and the tax years. . ."[44] The question itself anticipates that a tax return may not have been filed prior to the disclosure. The purpose of the disclosure is not to verify that an absolute refund is available as an asset to the trustee for distribution, but to inform the trustee about the totality of a debtor's affairs. Mr. Webb testified that he expected the IRS refund to offset taxes owed from prior years. The Court believes the Webbs deliberately withheld information regarding the Tax Refunds due to a fear that the

---

[42] *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 294 (Bankr. D. Kan. 2012) (citations omitted).
[43] *In re Barowsky*, 946 F.2d at 1519.
[44] *See, e.g.*, UST Exh. No. 2-14, Official Form 106 A/B, Question 28.

Chapter 7 Trustee would attempt to administer those funds on behalf of creditors, leaving the Webbs with non-dischargeable tax debts.

*The Boat and Truck*

The Webbs stated that the omission of the sale of the Boat and the transfer of the proceeds of its sale to Oklahoma Central Credit Union were due to "oversight." Similarly, the sale of the Truck was "inadvertently omitted" from the Original SOFA. When asked at the § 341 Meeting if they had sold anything of substantial value in the last two years, the Webbs answered "no." Mrs. Webb tried to excuse the omissions by stating that the Webbs were not considering filing for bankruptcy at the time of the sales, and therefore they did not document them in a way that they would be remembered. The Court finds these explanations to be untenable. The Webbs sold the Boat in May 2017, just over 6 months before the Petition Date, for $23,000, and the Truck in August 2017 for $1,000. The Court does not accept the Webbs' assertions that they "simply forgot" about these sales or the transfer of the proceeds to the secured creditor (of the Boat). The Court is convinced that the Webbs deliberately withheld details of these sales to prevent the Chapter 7 Trustee from investigating the circumstances of the sales and uncovering possible assets of the estate. At best, their "forgetfulness" regarding the sales was sufficiently reckless to be the functional equivalent of fraud for purposes of § 727(a)(4)(A).

*Business Draws*

The most disturbing omission, from the Court's perspective, is the Defendants' silence regarding personal draws taken from the various business entities owned by the Webbs during the year prior to the Petition Date. Neither the Original nor the Amended bankruptcy documents show that the Defendants received any income from the operation of a business in 2017, or in the 2 prior

years.[45] When questioned by the UST at a 2004 exam, Mr. Webb indicated that the draws paid to Roberta Webb from Flooring Plus were for personal expenses and not for wages or compensation.[46] Otherwise, the Defendants offered no explanation why substantial transfers totaling $18,854 to Mrs. Webb and $2,000 to Mr. Webb, in addition to $12,450 in cash deposits they made into their personal checking account, were not disclosed in Question 4 of the SOFA.[47] The Court notes that in both the Original and Amended Schedules, the Defendants listed all of their business interests as having no value, even though Diamondhawk was disclosed as operational.[48] The Court finds that the Webbs knowingly and fraudulently omitted information regarding the Business Draws from the Schedules in order to prevent the Chapter 7 Trustee from conducting an investigation and potentially seeking to recover those funds.

The words of the Bankruptcy Appellate Panel for the Tenth Circuit bear repeating here:

> We cannot overemphasize the importance to the bankruptcy system of full and honest disclosure of information by the parties seeking its protections. A Chapter 7 proceeding is not, nor should be, an arena in which players engage in obfuscation of facts in order to obtain an outcome not sanctioned by the Bankruptcy Code. Instead, a bankruptcy liquidation should be conducted as a joint effort to obtain both a fresh start for the debtor and the best possible return for its creditors, all within an environment of relative calm, overseen by the dispassionate but watchful eyes of a Chapter 7 trustee and ultimately ruled on by a bankruptcy judge. Competitive gamesmanship is inappropriate to the bankruptcy system. Thus, bankruptcy statutes and bankruptcy judges seek to prevent any party's taking of undue advantage over another while they are within the confines of the system. Typically, the protections provided by Chapter 7 are sought by "honest but unfortunate debtors" who do their best to fully disclose their financial condition. Occasionally, however, a debtor comes before the bankruptcy courts seeking

---

[45] *See* UST Exh. No. 2-51 to -52, SOFA, Question 4; UST Exh. No. 6-58 to -59, Amended SOFA, Question 4.

[46] *See* UST Exh. No. 4-59, *ll*. 1-21.

[47] At trial, Mr. Webb explained that Question 5 of the SOFA did not refer to business income. The Court agrees with Mr. Webb that Question 5 of the SOFA was not the appropriate place to disclose the business income, which should instead have been disclosed in Question 4.

[48] *See* UST Exh. No. 2-13 to -14, Question 19; UST Exh. No. 6-15 to -16, Question 19.

> something other than a "fresh start," such as elimination of creditor claims without the corresponding full disclosure of assets. This is precisely such a case.[49]

The Court readily infers the requisite fraudulent intent from the totality of the evidence. The facts outlined above show that Defendants made a substantial number of material false oaths. The Court concludes that these were made knowingly and with the intent to defraud the Chapter 7 Trustee and other parties in interest, and/or the Defendants acted with reckless indifference to the truth of the required disclosures. The Original Petition, Schedules, and SOFA were materially inaccurate as filed. The Defendants offered corrections or clarifications only when questioned by the Chapter 7 Trustee or UST. They delayed until after the filing of this adversary proceeding to submit an Amended Petition, Amended Schedules, and Amended SOFA, which, by their own admission, remain incomplete. As a result of the finding of a false oath, the Court does not reach any issues raised under § 727(a)(2) or (3).[50]

**Conclusion**

The Defendants shall not be granted a discharge in Case No. 17-12431-M pursuant to § 727(a)(4)(A). The Court will enter a separate judgment consistent with this Memorandum Opinion.

DATED this 2nd day of July, 2019.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7351.3

---

[49] *In re Garland*, 417 B.R. 805, 815-16 (10th Cir. BAP 2009).

[50] *Id.* at 810-11 ("[P]laintiff 'need prove only one of the grounds for non-dischargeability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive.' Thus, proof that satisfies any one subsection is sufficient to justify denial of a debtor's request for a discharge.") (citations omitted).